**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



Guy R. Humphrey
United States Bankruptcy Judge

**Dated: July 27, 2023**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTER DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 23-31157 |
| RELIABLE CASTINGS CORPORATION, | : | Chapter 11<br>Subchapter V |
| Debtor and Debtor-In-Possession. | : | Judge Guy R. Humphrey |

**AGREED INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363, FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2: (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF FINAL HEARING; AND (V) GRANTING RELATED RELIEF AND FIXING OBJECTION PERIOD [DOC. 8]**

**THIS MATTER** came before the Court for hearing on July 27, 2023 (the "Interim Hearing") on the *Emergency Motion Of The Debtor And Debtor-In-Possession For An Interim Order Under 11 U.S.C. §§ 105(A), 361, 362 And 363, Federal Bankruptcy Rules 2002, 4001 And 9014, And Local Rule 4001-2: (I) Authorizing Debtor To Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying The Automatic Stay; (IV) Scheduling And Approving The*

1

*Form And Method Of Notice Of Final Hearing; And (V) Granting Related Relief* (the "Motion"), filed by the debtor and debtor-in-possession, Reliable Castings Corporation (the "Debtor") in the above-captioned chapter 11 case (the "Case"); the Debtor having filed a voluntary petition under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), on July 25, 2023 (the "Petition Date"), and having requested in the Motion entry of interim and final orders:

(1) authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the Debtor's use of Cash Collateral (as defined herein) of the Senior Secured Lender (as defined herein);

(2) granting the Senior Secured Lender (as defined herein) (a) adequate protection, including, without limitation, adequate protection against the diminution in the value or amount of the Pre-Petition Collateral (as defined herein), and (b) Replacement Liens (as defined herein); and

(3) granting any further and related relief as the Court deems just and equitable.

Upon the record of the Case and in the absence of any objections this Court determines that good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtor's estate and creditors;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR PURPOSES OF ENTERING THIS INTERIM ORDER:**

A. On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11, Subchapter V, of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court"). The Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code.

B. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C. Sufficient and adequate notice of the Motion has been provided under the urgent circumstances presented and based upon the notice sent to the Interim Noticed Parties (defined below) pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(c) of the Bankruptcy Code, and no further notice or interim or preliminary hearing on, the Motion or this Interim Order is necessary or required.

D. The use of Cash Collateral (as defined herein) is granted, only upon the terms and conditions contained in this Interim Order.

E. It is in the best interests of the Debtor's creditors and the estate that it be allowed to continue its operations under the terms and conditions set forth herein.

F. Notice of the relief sought by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b) and (d) and Bankruptcy Code Section 102(1), as required by Bankruptcy Code section 363(c) has been given to the following parties in interest: (a) U.S. Trustee; (b) 20 largest unsecured creditors; (c) the Subchapter V Trustee; and (d) all known holders of secured claims (collectively, the "Interim Noticed Parties").

G. Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtor admits, stipulates, acknowledges and agrees to the following (collectively, Paragraphs G(i) through G(iii) hereof shall be referred to as the "Debtor's Stipulations"):

(i) <u>The Senior Secured Loan Indebtedness</u>. Prior to the commencement of the Case, Debtor's largest creditor was Spectrum Commercial Finance, LLC f/k/a Spectrum Commercial Services Company, L.L.C., a Louisiana limited liability company (the "Senior Secured Lender").

3

Debtor's obligation to the Senior Secured Lender is evidenced by:

(1) General Credit and Security Agreement to the Senior Secured Lender, dated as of August 19, 2020 a true copy of which is attached to the First Day Declaration as Exhibit "A" (the "Loan Agreement"), which was amended by the First Amendment thereto, a true copy of which is attached to the First Day Declaration as Exhibit "C," and by a Second Amendment thereto, a true copy of which is attached to the First Day Declaration as Exhibit "D.";

(2) Lockbox Agreement, dated as of August 19, 2020, in the form is attached to the First Day Declaration as Exhibit "B" (the "Lockbox Agreement");

(3) Open-End Mortgage, Security Agreement, and Assignment of Rents and Leases, Instrument Number 202000005096, recorded August 25, 2020, at Book 2239, Page 315 of the Shelby County Recorder's Office and re-recorded as Instrument Number 202000005469 on September 9, 2020, at Book 2242, Page 414 of the Shelby County Recorder's Office; and,

(4) UCC Financing Statement filed with the Ohio Secretary of State on July 7, 2020 as Financing Statement Number OH00243338705, as amended by those certain UCC-3 Financing Statements reflecting the Senior Secured Lender's name and address changes and the Debtor's address change (the "Senior Secured Loan Documents").

The total debt owed to the Senior Secured Lender under the Senior Secured Loan Documents, as of the Petition Date is approximately $2,927,905.75. The foregoing obligation, together with, all interest, fees, costs and expenses (including, but not limited to, attorneys' fees and expenses), and other charges, amounts and costs owing, accrued, accruing or chargeable in respect thereof, of any

kind or nature, whether existing or hereafter arising or accruing, whether matured, unmatured, liquidated, unliquidated or contingent, payable to or for the benefit of any person or entity, pursuant to any of the foregoing agreements, instruments or documents, is herein referred to as the "Senior Secured Indebtedness." The Senior Secured Indebtedness is secured by security interests created under the Senior Secured Loan Documents (the "Pre-Petition Senior Liens") in essentially all assets of Debtor (collectively, the "Pre-Petition Collateral"). The Debtor is in default of the Senior Secured Loan Documents.

(ii) <u>Validity and Priority of Pre-Petition Senior Liens and Senior Secured Indebtedness, Release, Waiver or Limitation of Claims or Other Causes of Action, including Chapter 5 Claims</u>. (a) The Pre-Petition Senior Liens are not subject to avoidance, re-characterization or subordination pursuant to the Bankruptcy Code, (b) the Senior Secured Indebtedness constitute legal, valid, binding and non-avoidable obligations of the Debtor that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Senior Secured Loan Documents, (c) no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Senior Secured Indebtedness exist, and no portion of the Senior Secured Indebtedness is subject to avoidance, re-characterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (d) the Debtor and its estate have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including without limitation claims under chapter 5 of the Bankruptcy Code, against the Senior Secured Lender and/or the agents, attorneys, advisors, professionals, officers, directors or employees.

(iii) <u>Cash Collateral</u>. All of the Debtor's cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whenever acquired, whether original

collateral or proceeds, products, rents or profits of other Pre-Petition Collateral or the proceeds thereof (the "Cash Collateral"), constitutes "cash collateral," as such term is defined in Bankruptcy Code section 363(a), of the Lender.

H. The Debtor represents as follows:

(i) that without the use of Cash Collateral proposed by the Motion, the Debtor will not have the funds necessary to pay trade vendors, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties.  The Debtor has requested that pursuant to this Interim Order and the budget attached hereto as Schedule 1, or in any successive budget that is approved by the Senior Secured Lender or authorized by this Court in accordance with Paragraph 4 below (the "Budget"), the Senior Secured Lender make available to the Debtor Cash Collateral, to be used by the Debtor solely for the purposes set forth in the Budget – **including through immediately turning over to the Debtor any funds received by the Senior Secured Lender pursuant to the Lockbox Agreement**.  The ability of the Debtor to continue its business under Chapter 11 of the Bankruptcy Code depends upon the Debtor utilizing the Cash Collateral.  Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors;

(ii) that the terms and conditions contained in this Interim Order governing the use of Cash Collateral are in the best interests of the Debtor, its estate and creditors;

(iii) that the Budget is a good faith estimate of the actual payments of expenses on post-petition claims necessary to be paid during the period for which the Budget covers (the "Budget Period") to continue the operations of the Debtor and preserve and maintain the value of the

Debtor's assets and properties; and

(iv) that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to its estate.

I.  Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Interim Order, and such entry is necessary to prevent irreparable harm to the Debtor's estate.

J.  Other than the Subchapter V Trustee, there has not been an examiner or trustee appointed in this case.  The Budget provides for a $500 per week monthly carve-out for the Subchapter V Trustee to be held by the Subchapter V Trustee in trust against fees that may be approved in the future.  The initial term of the Budget does not provide for any additional funds to the proposed counsel for the Debtor, but the Debtor anticipates future periods to include $2,500 per week as a carve-out for the proposed counsel to the Debtor to be held in trust against fees that may be approved in the future.  Such funds subject to these carve out provisions shall remain property of the bankruptcy estate until fees are authorized and such funds are approved for payment.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. <u>Motion Granted</u>.  The Motion is **GRANTED** on an interim basis as set forth herein.

2. <u>Authorization to Use Cash Collateral</u>.  The Debtor is hereby authorized to use Cash Collateral, solely in accordance with the terms and conditions of this Interim Order during the Interim Period (as defined in the Motion") solely to the extent as is necessary to avoid immediate and irreparable harm to the estate during the Interim Period.

3. <u>DIP Account</u>.  The Debtor shall transfer all its cash to a Debtor-in-Possession bank account or otherwise have its existing account, pursuant to separate order, approved as a Debtor-in-

7

Possession account (the "Cash Collateral Account") and shall immediately deposit all cash received by it into the Cash Collateral Account. Cash received by Secured Lender through its lockbox or collateral account arrangements with the Debtor shall be transferred by the Secured Lender to the Debtor-in-Possession account on an "as-collected" basis.

4. <u>Budget Limitations on Cash Collateral Usage</u>. All Cash Collateral must be used strictly in accordance with the terms of the Budget. The Debtor shall not, without prior written consent of the Senior Secured Lender, use Cash Collateral in excess of 10% of the amount identified in the Budget for the "Total Cash Operating Expenses" for the Budget Period unless the sales exceed such 10%, and then Debtor can use the Cash Collateral proportionally. The Debtor shall not, without prior written consent of the Senior Secured Lender, use Cash Collateral in excess of 15% of the amount identified on any individual Budget line item. Any extension or other modification of the Budget shall be subject to the prior written approval of the Senior Secured Lender. The Debtor is not authorized to use any Cash Collateral to pay any type of expense not included in the Budget. All cash not spent on the line items set forth in the Budget during the Interim Period shall remain in the Cash Collateral Account subject to further Order of the Court. Further, to the extent any items set forth in the Budget relate to payment of pre-petition obligations that have not otherwise been approved for post-petition payment, this Interim Order shall not be deemed as approval for payment of such items and no such payments shall be made.

5. <u>Senior Secured Lender's Collateral and Priority</u>.  Pursuant to Bankruptcy Code 362 and 363(e) as security for the prompt payment and performance of any and all obligations incurred by the Debtor to the Senior Secured Lender, of whatever nature or description, the Debtor is hereby authorized to grant to the Senior Secured Lender, and upon entry of this Interim Order shall be deemed hereby to have granted to the Senior Secured Lender, valid, binding, enforceable and perfected first priority liens and security interests, superior to the liens and security interests or other interests or rights of all other creditors of the Debtor's estate on property owned or leased by the Debtor, in and upon (i) all of the Cash Collateral and all proceeds thereof, and (ii) all of the Debtor's tangible personal property (excluding certificated vehicles) whether acquired prior to or after the Petition Date and all proceeds of any and all of the foregoing (the property and assets referred to in clause (ii) is referred to as the "Post-Petition Collateral," and together with the property and assets in clause (i), the "Collateral"), and all proceeds of the Collateral.

6. <u>Adequate Protection of Senior Secured Lender's Interests, Section 507 Priority and Replacement Lien</u>.  As adequate protection for any post-petition diminution in value of the Senior Secured Lender's interests in the Cash Collateral, including without limitation for any diminution in value resulting from the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral or the imposition of the automatic stay, the Senior Secured Lender is hereby granted administrative expense claims against the Debtor's estate for the full amount of such diminution, in accordance with section 507(b) of the Bankruptcy Code, with priority over every other claim allowable under section 507(a) of the Bankruptcy Code, except for the claim of the Subchapter V Trustee for the amount of fees subject to carve out (the "Adequate Protection Claim").  In order to secure the Adequate Protection Claim, the Senior Secured Lender is hereby granted a lien and security interest (the "Replacement Lien") in and upon (a) the Pre-Petition Collateral and all post-petition proceeds of the Pre-Petition Collateral, and (b) the Post-Petition Collateral and all proceeds thereof to the same extent, validity and priority as its pre-petition security interest.  As additional adequate protection, in the event that the Debtor's cash collections exceed total expenses on a monthly basis, then the Debtor shall pay the excess funds to the Senior Secured Lender, with such payment to be applied to unpaid interest.

7. <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.  Nothing in this Interim Order shall prejudice the rights of any party in interest other than the Debtor to object to or challenge the Debtor's Stipulations; *provided however*, that unless such other party in interest obtains proper standing and commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Senior Secured Lender in the nature of a setoff, counterclaim or defense of the Senior Secured Indebtedness (including, but not limited to, those under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code

or by way of suit against the Lender) within 75 days after the entry of this Interim Order (the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no contested matter or adversary proceeding is commenced during the Challenge Period shall be referred to as the "Challenge Period Termination Date"), then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party shall be deemed to be forever waived, barred and discharged and the Debtor's Stipulations shall be binding on all persons, entities, creditors, interest holders and parties in the Case or any successor case, and upon the Challenge Termination Period the Senior Secured Indebtedness shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with this Case and any Successor Case. Only those parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter challenging the Debtor's Stipulations prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding or contested matter.

8. <u>Maintenance, Insurance; Government Charges</u>. Except as otherwise provided herein, the Debtor shall maintain the Collateral and ensure the proper maintenance of the Collateral, including, as necessary, through incurrence and payment of expenses set forth in the Budget. The Debtor, at its expense, shall (a) continue to at all times keep the Collateral fully insured against all loss, peril and hazard, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the Collateral, whether or not the Debtor is obligated to do so under the Senior Secured Loan Documents, and will provide the Senior Secured Lender with proof thereof upon written demand and will give the Senior Secured Lender access to its records in this regard.

9. <u>Modification of Automatic Stay</u>. The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtor to grant the Replacement Liens as

11

adequate protection to the Senior Secured Lender, and (b) the Debtor to create, and the Senior Secured Lender to perfect, any and all liens and security interests granted to it hereunder; *provided, however,* that the Senior Secured Lender shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien or security interest granted by this Interim Order or take any other action to perfect such liens and security interests, and such liens and security interests are deemed perfected; *provided however*, that if the Senior Secured Lender shall, in their sole discretion, elect for any reason to file, record or serve any financing statements or other document with respect to such liens and security interests, the Debtor shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Interim Order.

10. <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute a "Termination Event" under this Interim Order:

(a) the Case is either dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(b) a trustee (other than the subchapter V trustee already appointed to serve in this Case) or an examiner with expanded powers is appointed in the Case, or the Debtor ceases to be a debtor-in-possession;

(c) the Debtor ceases operation of its business or takes any material action for the purposes of effecting such cessation without the prior written consent of the Senior Secured Lender;

(d) the Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of the Senior

Secured Lender hereunder or shall materially and adversely affect the priority of any or all of the Senior Secured Lender's claims, liens or security interests and which is not acceptable to the Senior Secured Lender;

(e) the Court shall not have entered a further interim order on the Motion or a Final Order on or before the last day of the Interim Period;

(f) the Debtor's failure to comply with or perform the terms and provisions of this Interim Order in strict adherence to the time period set forth herein and/or using Cash Collateral other than in accordance with the provisions of the Budget and this Interim Order;

(g) any sale or other disposition of Collateral or Cash Collateral is approved without consent of the Senior Secured Lender; and

(h) the automatic stay of Bankruptcy Code section 362 is lifted so as to allow a party other than the Senior Secured Lender to proceed against any material asset of the Debtor.

11. <u>Remedies Upon Maturity/Termination</u>. Upon the occurrence of the Maturity Date (as defined in the Senior Secured Loan Documents), or upon the occurrence of a Termination Event and the giving of the Remedies Notice (as defined below):

(a) Any and all Adequate Protection Claims shall be immediately due and payable, and the Debtor's authorization to use Cash Collateral shall terminate;

(b) The Debtor shall immediately segregate all Cash Collateral, and shall not be permitted to use Cash Collateral unless the Senior Secured Lender shall have given their prior written consent or the Court shall have entered an order, after a hearing upon notice to the Senior Secured Lender, authorizing such use; and

(c) The Senior Secured Lender shall have the right, free of restrictions of Bankruptcy

Code section 362, (i) to take immediate reasonable action to protect and preserve the Collateral, including, without limitation, seeking a receiver appointed to collect rents and manage the Debtor's assets, and (ii) after giving five (5) Business Days' prior written notice of a Termination Event to the Debtor, the Office of the US Trustee, and the Subchapter V Trustee (the "Remedies Notice"), to exercise their rights an remedies pursuant to the Senior Secured Loan Documents and/or applicable law, including without limitation, to foreclose on all or any portion of the Collateral, collect accounts receivable and other monies owing to the Debtor and apply the proceeds thereof in satisfaction of the Adequate Protection Claims and the Senior Secured Indebtedness unless, prior to the passage of such five (5) Business Days, the Court shall have entered an order, after a hearing upon notice to the Senior Secured Lender limiting or restraining the Senior Secured Lender from exercising any or all such rights and remedies.

12. <u>No Limitation on the Senior Secured Lender.</u>  Nothing contained herein shall be construed as a waiver of any rights, remedies, claims or objections that the Senior Secured Lender may have under the Senior Secured Loan Documents, the Bankruptcy Code, or applicable law, including rights to seek relief from the automatic stay of § 362 of the bankruptcy Code with respect to all or any of the Collateral, the value of such Collateral, and to seek modification of this Interim Order and the Cash Collateral used hereunder, including but not limited to requesting modification or termination of this Order in the event that the Debtor or any other person requests a grant of rights against the Debtor, the estate and/or property of the estate that is or would be secured by a lien, mortgage or security interest in any of the Collateral or is or would be entitled to administrative expense status that is equal or superior to that granted to the Senior Secured Lender in this Interim Order..

13. <u>Reporting Obligations</u>.  Without limiting the Debtor's reporting obligations under the

Senior Secured Loan Documents (except to the extent such obligations are expressly modified in this Section 13), the Debtor:

(a) shall deliver to the Senior Secured Lender, no later than twenty (20) calendar days after the end of each month a copy of the Debtor's monthly operating report for such month as filed with the Court and with the office of the U.S. Trustee;

(b) shall deliver to the Senior Secured Lender, within five (5) calendar days of the Debtor's receipt thereof, copies of all audited financial statements or other similar financial statements which reflect the Debtor's assets and liabilities and results of operations; and

(c) shall permit representatives, agents and/or employees of the Senior Secured Lender to visit, inspect and have access to the Debtor's premises and books and records upon five (5) Business Days' notice, and shall cooperate and consult with, and provide to such representatives, agents and/or employees any and all non-privileged information in the Debtor's custody or control regarding the operation of the Debtor's businesses, and the Senior Secured Lender shall have the right to inspect, audit, examine, check, make copies or extracts from all such information, including the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtor and the Debtor shall make all of the same available to the Senior Secured Lender and its representatives for such purposes.

14. <u>Books and Records</u>.  The Debtor is directed to keep its books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business.

15. <u>Good Faith</u>.  Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 363(m), the validity of the Adequate Protection Claims and the validity and priority of the liens and security interests authorized or granted by this Interim Order shall be binding on the Debtor,

its estate and their successors and assigns even if this Interim Order is reversed or modified on appeal.

16. <u>Payment of Professional Fees</u>.  Notwithstanding any other provision of this Interim Order, payment of professional fees from Cash Collateral pursuant to the Budget or otherwise shall be subject to the Bankruptcy fee application process.  Retained professionals shall make such applications in accordance with any separate order establishing procedures for monthly and interim compensation and reimbursement of fees for professionals, or as otherwise required by applicable law or rules.  Payment of compensation to Debtor's counsel may only be made to the extent ordered by the Court upon ruling on the Debtor's counsels' fee applications.

17. <u>Additional Documents</u>.  The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of its obligations hereunder.

18. <u>Immediate Effect</u>.  As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Interim Order shall become effective immediately.

19. <u>Survival After Confirmation, Conversion or Dismissal</u>.  The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code; *provided, further*, that the terms and provisions of this Interim Order, as well as the liens and security interests granted hereunder, shall continue in this Case or any Successor Case and such liens and security interests and the Adequate Protection Claim shall maintain their priority as provided by this Interim Order.

20. <u>No Limitation or Modification of Order</u>.  Nothing in this Interim Order shall limit the Senior Secured Lender's right to seek modification of this Interim Order.

21. <u>No Prejudice of Rights Against Third Parties</u>.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that the Senior Secured Lender may have against parties other than the Debtor.

22. <u>Effect on Third Parties</u>.  The provisions of this Interim Order shall be binding on all third parties provided that any other secured party may be provided adequate protection for its interests in the Pre-Petition Collateral, if any, which adequate protection shall not contradict or otherwise interfere with the terms of this Interim Order.

23. <u>Service of the Interim Order</u>.  Within three (3) Business Days after entry of this Interim Order, the Debtor shall serve a copy of this Order on all creditors and parties in interest.

24. <u>Binding Effect</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Senior Secured Lender, the Debtor, the Debtor's estate and their respective successors and assigns (including any trustee appointed as a representative of the Debtor's estate or in any Successor Case).

25. <u>Controlling Effect</u>.  To the extent that any provision of this Interim Order conflicts with any provision of any of the Senior Secured Loan Documents, which shall remain in full force and effect, this Interim Order is deemed to control and shall supersede the conflicting provision(s).

26. <u>Further Limitations on the Debtor</u>.  The Debtor-in-Possession will not do any of the following things without the express written consent of the Senior Secured Lender, or its respective counsel:

    (a)    Increase the wages of any of its employees or officers above the current rate paid such employees or officers nor substantially enlarge the number of employees from the Debtor's historical number;

(b) Incur any obligation or liability in excess of amounts provided in the Budget, whether with regarding to services to be provided to the Debtor, materials, inventory, supplies or equipment to be purchased by the Debtor, or otherwise.

(c) Pay an amount owing on any claim arising prior to the Petition Date, other than to the Senior Secured Lender as provided herein or as may be otherwise provided for in an order of the Court.

27. <u>Final Hearing.</u> The Court will conduct a final hearing on the Motion on August 23, 2023 at 1:30 p.m., as necessary, absent the submission of a further or final agreed order. Any objections or response to entry of a final order granting the relief requested in the Motion shall be filed on or before August 16, 2023 at 4:00 p.m., provided, however, that in the event there are no timely filed objections or all timely filed objections are resolved prior to the hearing, a final order may be entered without further hearing. At that final hearing or by agreed order, the Court may modify the provisions of this Interim Order as provided for herein. In the event this Interim Order is extended, all of the provisions hereof shall remain in full force and effect, except to the extent otherwise provided for in an order of the Court extending this Interim Order.

**IT IS SO ORDERED.**

AGREED:

COOLIDGE WALL CO., L.P.A.

*/s/ Patricia J. Friesinger*

_____
Patricia J. Friesinger (0072807)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177  Fax: 937/223-6705
E-Mail: friesinger@coollaw.com

*Proposed Counsel for Debtor and Debtor-In-Possession Reliable Castings Corporation*

*/s/ Matthew T. Schaeffer by P. Friesinger per email approval*

_____
Matthew T. Schaeffer (0066750)
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Tel: 614/229-3289; Fax: 614/221-0479
E-Mail: mschaeffer@baileycav.com

*Counsel for Secured Creditor Spectrum Commercial Finance, LLC*

Andrew R. Vara
United States Trustee
Regions 3 and 9

| | |
|---|---|
| By: Have Seen, No Objection<br>_____<br>Ryan Lett (0088381)<br>U.S. Department of Justice<br>Office of the U.S. Trustee<br>550 Main Street, Suite 4-812<br>Cincinnati, Ohio 45202<br>Tel: 513/684-6989; Fax: 513/684-6994<br>E-Mail: ryan.lett@usdoj.gov | */s/ Donald W. Mallory* **By P. Friesinger per in-person discussion at Court**<br>_____<br>Donald W. Mallory (0070875)<br>Wood + Lamping LLP<br>600 Vine Street, Ste. 250<br>Cincinnati, OH 45202<br>Tel: 513/852-6094 Fax: 513/419-6494<br>Email: dwmallory@woodlamping.com<br>*Subchapter V Trustee* |

Copies to: Default List

Schedule 1

Reliable Castings
cash projection

| item | week ending 7/30/2023 | week ending 8/6/2023 | week ending 8/13/2023 | week ending 8/20/2023 | Total |
|---|---|---|---|---|---|
| cash collections | 315,000 | 315,000 | 315,000 | 315,000 | 1,260,000 |
| payroll | 100,000 | 125,000 | 150,000 | 150,000 | 525,000 |
| metal purchases | 100,000 | 100,000 | 100,000 | 100,000 | 400,000 |
| utilities |  | 60,000 | 60,000 |  | 120,000 |
| medical claims | 20,000 | 20,000 | 20,000 | 20,000 | 80,000 |
| supplies and repairs | 20,000 | 20,000 | 20,000 | 20,000 | 80,000 |
| Subchapter V trustee | 2,000 |  |  |  | 2,000 |
| total expenses | 242,000 | 325,000 | 350,000 | 290,000 | 1,205,000 |