**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



Guy R. Humphrey
United States Bankruptcy Judge

**Dated: September 29, 2023**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No.  23-31157 |
| | : | |
| RELIABLE CASTINGS CORPORATION | : | Chapter 11 (Subchapter V) |
| | : | |
| DEBTOR IN POSSESSION. | : | Judge Guy R. Humphrey |

---

**INTERIM ORDER PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE (A) AUTHORIZING DEBTOR TO OBTAIN SECURED POST-PETITION FINANCING AS TO FACTORING ARRANGEMENT WITH SPECTRUM COMMERCIAL FINANCE, LLC, (B) SCHEDULING A FINAL HEARING ON THE MOTION PURSUANT TO BANKRUPTCY RULE 4001, AND (C) GRANTING RELATED RELIEF (DOC. 116)**

---

This matter is before the Court upon the Motion of Reliable Castings Corporation (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, For Interim and Final Orders:  (A) Authorizing Debtor To Obtain Interim And Final Post-Petition Financing Via (1) Factoring Arrangement with Spectrum Commercial Finance, LLC, and (2) Insurance Premium Financing Provided By AFCO Credit Corporation; (B) Scheduling A Final Hearing On The Motion Pursuant to Bankruptcy Rule 4001, and (c) Granting Related Relief  (Doc. 116, the

"DIP Financing Motion"). [1]  The portion of the DIP Financing Motion relating to the financing to

be supplied by AFCO Credit is subject to a separate order. An interim hearing was held on the DIP

Financing Motion in accordance with Bankruptcy Rule 4001(c)(1) and (2) on September 29, 2023,

2023 (the "Interim Hearing")

Upon review of the DIP Financing Motion, the exhibits thereto, including without

limitation, the Term Sheet, the declaration of Thomas Barton in support of the DIP Financing

Motion, and all other pleadings and papers filed in this chapter 11 case; and upon consideration of

the statements of counsel and the evidence presented at the Interim Hearing, this Court **FINDS**

**AND CONCLUDES** that

On the Petition Date, the Debtor commenced in this Court a voluntary case under Chapter

11 of the Bankruptcy Code with a Subchapter V Election.  The Debtor is operating its business and

managing its property as debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

This Court has jurisdiction over this proceeding and the parties in interest and properties

and interests in properties affected hereby under §§ 157(b) and 1334 of title 28 of the United States

Code (the "Judiciary Code").  Consideration of the DIP Financing Motion constitutes a core

proceeding under § 157(b)(2) of the Judiciary Code.  The statutory predicates for the relief granted

herein are §§ 105, 361, 362, and 364, of the Bankruptcy Code and Bankruptcy Rule 4001(c)(1)

and (2).  Venue of the Debtor's case and this Motion in the District is proper pursuant to §§ 1408

and 1409 of the Judiciary Code.

An immediate and critical need exists for the Debtor to obtain funds in order to continue

the operation of its business, to avoid a default under the Final Cash Collateral Order and to

---

[1]   Capitalized terms not otherwise defined herein shall have the same meanings given to them in
the DIP Financing Motion.

continue to meet the operating requirements of the United States Trustee's Office.  Without such

funds the Debtor lacks sufficient liquidity to operate efficiently to support reorganization and fund

the minimum amounts required to maintain proper insurance.  It is imperative that the Debtor

maintain its operations to realize upon its going concern value and to successfully reorganize its

affairs.  Any cessation in the Debtor's business will cause irreparable harm to the Debtor's estate.

Without a sufficient source of post-petition financing available to Debtor to fund operations, the

viability of the Debtor's business operations is seriously threatened.  Further, the Debtor is required

by the US Trustee's guidelines and the Final Cash Collateral Order to maintain appropriate

insurance.  Without the DIP Financing to pay the down payment on the Debtor's insurance and the

Premium Financing to pay the remainder of the Debtor's insurance expense (as authorized under

a separate order), the Debtor's policy will lapse.  The ability of the Debtor to finance its operations

and the availability to it of sufficient working capital and liquidity through the incurrence of new

indebtedness are essential to the confidence of the Debtor's vendors and suppliers and to the

preservation and maintenance of the going concern value of the Debtor's estate.

The Debtor submits that it has attempted, but has been unable, to obtain interim financing

on terms more favorable than under the DIP Financing offered by DIP Factor, which documents

outlining the terms of the DIP Financing were attached to the DIP Financing Motion.  Subject to

the approval of this Interim Order and the entry of a Final Order in form and substance acceptable

to the DIP Factor in its discretion (the "Final Order"), and the terms and conditions of the DIP

Financing, the DIP Factor will provide 100% of the commitment to be funded under the DIP

Financing.  The Debtor further submits that it has been unable to obtain unsecured credit or

unsecured debt allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense

pursuant to § 364(a) or (b) of the Bankruptcy Code.  The Debtor further submits that new credit is

unavailable to the Debtor without its granting to the DIP Factor a priming lien in first position on all assets (aside from the Excluded Assets).

Substantially all of the Debtor's assets are subject to liens and security interests asserted by the Debtor's pre-petition secured lender, Spectrum.  Spectrum has indicated a willingness to consent and agreed to provide financing to the Debtor subject to (i) the entry of this Order and the Final Order, (ii) the terms and conditions of the DIP Financing as outlined in the Term Sheet and the other Financing Documents (which Financing Documents will control over the Term Sheet and remain subject to review and approval by the DIP Factor), and (iii) findings by the Court that such financing is essential to the Debtor's estate, is in good faith, and that the DIP Factor's claims, including priority lien position and other protections granted pursuant to this Order, the DIP Financing, and the other post-petition financing documents will not be affected by any subsequent reversal, modification, vacatur or other amendment of this Order or any other Order, as provided in § 364(e) of the Bankruptcy Code.

On September 27, 2023, at this Court's direction, the Debtor served notice of the Interim Hearing and the proposed entry of this Order on the 20 largest unsecured creditors listed in the Debtor's List of Creditors, the DIP Factor, Premium Financer (through its counsel), Office of the United States Trustee for the Southern District of Ohio, the Subchapter V Trustee, and all secured creditors, which notice was sent by overnight courier, email, or the Court's ECF Noticing Service. Under these exigent circumstances, requisite notice of the DIP Financing Motion and the relief requested thereby has been provided in accordance with Bankruptcy Rule 4001, which notice is adequate and sufficient for all purposes under the Bankruptcy Code, including, without limitation, §§ 102(1), 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9007, 9013, and 9014, and other applicable law and rules of the Court, and no other or further

notice need be given for the entry of this Order.  Good cause has been shown for the entry of this

Order.  The ability of the Debtor to finance its operations and insurance premiums and the

availability to it of sufficient working capital through the incurrence of new indebtedness for

borrowed money and other financial accommodations is in the best interest of the Debtor and its

creditors and estate.  Among other things, entry of this Order will minimize disruption of the

Debtor's business and operations and permit it to meet payroll and other critical operating

expenses, and to maintain normal operations.  The interim financing authorized hereunder is vital

to avoid immediate, irreparable harm to the Debtor's estate and to allow the orderly continuation

of the Debtor's business.

The DIP Financing and the Financing Documents have been negotiated in good faith and

at arm's length between the Debtor and the DIP Factor.  Any credit extended, factoring

accommodation, financings made and other financial accommodations extended to the Debtor by

the DIP Factor shall be deemed to have been extended or made, as the case may be, in good faith

and within the meaning of § 364(e) of the Bankruptcy Code.

Based upon the proffers of testimony provided at the hearing to consider the interim post-

petition financing, the Declaration of Thomas Barton, the terms of the DIP Financing are fair and

reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary

duties, and are supported by reasonably equivalent value and fair consideration.

The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule

4001(c)(2).  The relief granted herein to enter into the DIP Financing, the Financing Documents,

and other post-petition financing documents, and obtain interim post-petition financing thereunder

is necessary to avoid immediate and irreparable harm to the Debtor.  This Court concludes that the

entry of this Interim Order permitting interim borrowings under the proposed DIP Financing of up

to $500,000, but only as and to the extent needed to fund operational shortfalls and only to pay expenses in accordance with the Budget, pending final hearing on the DIP Financing Motion, is in the best interests of the Debtor, its estate and creditors and its implementation will allow for the continuous operation of the Debtor's business and the full Premium Financing is needed to fund the insurance premiums to avoid default under *inter alia* the Final Cash Collateral Order.

IT IS HEREBY ORDERED, ADJUDGED and DECREED:

1.      The Debtor's requested authorization to receive financing on an interim basis under the proposed DIP Financing of up to $500,000, but only as and to the extent necessary to fund operational shortfalls, the down payment required for insurance premium payment and only to pay expenses in accordance with the Budget and in accordance with the Financing Documents (the "Interim Financing") pending a final hearing on the DIP Financing Motion, is granted.

2.      The Debtor is hereby authorized to enter into, execute and deliver the Financing Documents and the other post-petition financing documents and to perform its obligations thereunder in accordance with the terms thereof.

3.      Upon execution and delivery of the Financing Documents and the other post-petition financing documents, such agreements, documents and instruments shall constitute valid, binding obligations (the "Obligations") of the Debtor, enforceable against the Debtor in accordance with their terms; provided, however, that notwithstanding any other provision hereof or of the Financing Documents and any other post-petition financing documents, pending the entry of a Final Order approving the DIP Financing, the Financing Documents, and the other post-petition financing documents, the aggregate amount of the Interim Financing shall not exceed $500,000.

4.      Any officer of the Debtor, acting singly, is hereby authorized to execute and deliver the Financing Documents and the other post-petition financing documents on behalf of the Debtor, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtor.

5.      The Debtor shall promptly reimburse the DIP Factor for its reasonable costs and expenses in accordance with the Financing Documents.  None of such costs and expenses shall be subject to the prior approval of this Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

6.      As security for all financings, advances, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by Debtor to DIP Factor under the DIP Financing or hereunder, including without limitation, all principal and accrued interest, costs, fees and expenses (the "DIP Obligations"), Debtor is hereby authorized and directed to grant to DIP Factor valid, binding, enforceable, and perfected liens pursuant to section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code as follows: a perfected first-priority security interest in and lien against all of the Debtor's assets (aside from the Excluded Assets) securing the DIP Obligations.

7.      The automatic stay of Section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit DIP Factor to receive, collect and apply payments and proceeds with respect to the factored accounts receivable and to execute and record security agreements and financing documents executed in accordance with the terms and provisions of this Order, any Final Order, and the DIP Financing, including without limitation the Financing Documents.

8.     The DIP Factor shall have no obligation to make any financing or advance under the DIP Financing unless the conditions precedent to the making of such financing or advance set forth in the Financing Documents are satisfied.

9.     DIP Factor's security interests and liens on all assets (other than the Excluded Assets) shall at all times be senior to the rights of the Debtor and any successor trustee in the case or any other subsequent proceedings under the Bankruptcy Code, the liens and security interests of any creditor holding pre-petition or post-petition liens or security interests.  The security interests and liens granted to DIP Factor herein shall not be made on a parity with, or subordinated to, any other security interest or lien, except as provided in this Order. DIP Factor's security interests, liens, and mortgages shall at all times remain senior and first priority (other than as to the Excluded Assets).

10.     Notwithstanding anything to the contrary contained in this Order, the liens and security interests of the DIP Factor granted pursuant to this Order do not extend to the Excluded Assets, which specifically include the real property (including buildings, improvements, and fixtures) owned by the Debtor located in Hamilton County, Ohio (collectively, the "Hamilton County Real Property") or any proceeds of the Hamilton County Real Property including, without limitation, insurance proceeds.

11.     If DIP Factor hereafter requests Debtor to execute and deliver to DIP Factor financing statements or other instruments or documents considered by DIP Factor to be necessary or desirable to further evidence the perfection of the liens and security interests granted in this Order, Debtor is hereby authorized and directed to execute and deliver those financing statements, instruments, and documents, DIP Factor may, in its sole discretion, file financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such liens,

security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded as of the Petition Date.

12.      The Budget and the Final Cash Collateral Order provide for a $3,000 per month carve-out for the Trustee, except for the first month after the Petition Date to be funded at the rate of $5,000, all to be held by the Trustee in trust against fees that may be approved in the future (the "Trustee's Carve Out").  The Budget and Final Cash Collateral Order also provide for a total $15,000 per month carve-out for the Debtor's professionals (including accountants, attorneys, and Forevisor, LLC) to likewise be held in trust against fees that may be approved in the future (together with the Trustee's Carve Out, the "Carve Outs").  For the avoidance of doubt, except for the Carve Outs, no line item (or any dollar amount thereof) set forth in the Budget shall constitute a "carve out" or otherwise be a surcharge against, or have priority over the DIP Obligations of the Debtor to the DIP Factor arising under this Order.

13.      The DIP Obligations of the Debtor to the DIP Factor arising under this Order or the Financing Documents shall constitute, in accordance with § 364(c)(1) of the Bankruptcy Code, claims against the Debtor in its chapter 11, subchapter V case which are administrative expense claims having priority over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c) and 1114 of the Bankruptcy Code. No costs or administrative expenses which have been or may be incurred in the Debtor's chapter 11, subchapter V case or in a subsequent case under chapter 7 of the Bankruptcy Code as a result of a conversion pursuant to § 1112 of the Bankruptcy Code, are or will be prior to or on a parity with the claims of the DIP Factor with respect to DIP Obligations. No claim (other than the Carve Outs) having a

priority superior to or in pari passu with that granted by this Order or the Financing Documents to

the DIP Factor shall be granted under § 364(c)(1) of the Bankruptcy Code or otherwise unless and

until all DIP Obligations have been indefeasibly and unconditionally paid in full in cash, or upon

consent of the DIP Factor.

14.     The super-priority administrative expenses claim granted to the DIP Factor under

this Order or the Financing Documents, and the priority thereof, and any payments made pursuant

thereto or hereto, shall be binding (subject to the terms hereof) on the Debtor, any successor trustee

for the Debtor, and all creditors of the Debtor, as provided in § 364(e) of the Bankruptcy Code,

whether in this Chapter 11 case, in any subsequent case under Chapter 7 of the Bankruptcy Code

or upon dismissal of any such Chapter 11 or Chapter 7 case.

15.     For the avoidance of doubt, subject to the entry of and the provisions of a final order

on the DIP Financing Motion, in consideration of the use of the proceeds of the DIP Financing and

advances provided for herein, the Debtor hereby agrees not to assert and affirmatively waives any

claim it and its bankruptcy estate otherwise might have under section 506(c) of the Bankruptcy

Code as to the DIP Factor.

16.     The Debtor may use proceeds of the DIP Financing and advances made pursuant to

the Financing Documents only for purposes specifically set forth in the DIP Financing and

Financing Documents.

17.     The Debtor shall execute and deliver to the DIP Factor all such agreements,

instruments and other documents as the DIP Factor may reasonably request.

18.     All Obligations of the Debtor to the DIP Factor under the Financing Documents

will be repaid as set forth in the Financing Documents.

19.     The time and manner of payment of the DIP Obligations pursuant to the DIP
Financing and the Financing Documents and the DIP Factor's super-priority claims shall not be
altered or impaired by any plan of reorganization which may hereafter be confirmed or by any
further order which may be hereafter entered without the consent of the DIP Factor (subject only
to such reservations of rights as are expressly set forth in this Order).

20.     The provisions of this Order and any actions taken pursuant hereto shall survive the
entry of any order (a) confirming any plan of reorganization in this chapter 11 case and, to the
extent not satisfied in full, the DIP Obligations shall not be discharged by the entry of any such
order, or pursuant to Bankruptcy Code § 1141(d)(4), the Debtor having hereby waived such
discharge, (b) converting this chapter 11 case to a chapter 7 case, (c) the entry of a final order in
this case vacating or modifying the automatic stay imposed under § 362(a) of the Bankruptcy Code
as it relates to the Debtor, or (d) dismissing this chapter 11 case.

21.     Without limiting the rights of access and information afforded the DIP Factor under
the Financing Documents, the Debtor shall permit representatives and/or employees of the DIP
Factor to have reasonable access to the Debtor's premises and its records during normal business
hours (without unreasonable interference with the proper operation of the Debtor's businesses) and
shall cooperate, consult with, and provide to such persons all such non-privileged information as
they may reasonably request. During the term of this Order, Debtor shall provide to DIP Factor,
the Subchapter V Trustee, and counsel for the United States Trustee: (i) copies of the monthly
operating reports filed in this case; (ii) reasonable priority access to the Debtor's books, records
and management personnel, and (iii) such other items as agreed or as required by the Court.

22.     If any or all of the provisions of this Order or the Financing Documents or any other
post-petition financing document are hereafter modified, vacated, amended or stayed by

subsequent order of this Court or any other Court, such modification, vacatur, amendment or stay shall not affect the validity of any obligation to the DIP Factor that is or was incurred prior to the effective date of such modification, vacatur, amendment or stay, or the validity and the enforceability of any priority authorized or created by this Order, the Financing Documents or any other post-petition financing document.  Further, notwithstanding any such modification, vacatur, amendment or stay, any obligations of the Debtor pursuant to this Order or the Financing Documents or any other post-petition financing document arising prior to the effective date of such modification, vacatur, amendment or stay shall be governed in all respects by the original provisions of this Order and the Financing Documents and the other post-petition financing documents.  The validity of any such credit extended pursuant to this Order or the Financing Documents or the other post-petition financing documents is subject to the protection accorded under § 364(e) of the Bankruptcy Code and shall not be subject to subordination or recharacterization based upon the DIP Factor's relationship to, affiliation with, or insider status with respect to the Debtor.

23.    Subject to the entry of and the provisions of a final order on the DIP Financing Motion, Debtor shall indemnify and hold harmless DIP Factor and its respective shareholders, directors, agents, officers, subsidiaries and affiliates, successors and assigns from and against any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages and reasonable expenses of every nature and character arising out of the DIP Financing or the transactions contemplated thereby, pursuant to the terms of the Financing Documents and as further described therein.

24.     The DIP Factor's failure to seek relief or otherwise exercise its rights and remedies under the Financing Documents, any other post-petition financing documents, or this Order, shall not constitute a waiver of any of the DIP Factor's rights hereunder, thereunder, or otherwise.

25.     Subject to the provisions of the DIP Financing, the Debtor and the DIP Factor may amend, and the DIP Factor may waive, any provision of the Financing Documents and the other post-petition financing documents without seeking the approval of this Court; provided, however, that such amendment or waiver, in the reasonable judgment of the Debtor and the DIP Factor, is either nonprejudicial to the rights of third parties or is not material.  Except as otherwise set forth in the foregoing sentence, no waiver, modification, or amendment of any of the provisions hereof or of the Financing Documents or the other post-petition financing documents shall be effective unless set forth in writing, signed by the parties hereto and approved by the Court.

26.     Nothing contained herein shall create or limit the rights of the DIP Factor to: (i) seek relief from the automatic stay of Section 362 of the Bankruptcy Code at any future time; (ii) request a conversion of the Debtor's case to Chapter 7 or removal of the Debtor as a debtor-in-possession pursuant to Section 1185 of the Bankruptcy Code; or (iii) take any other action allowed under the Bankruptcy Code.

27.     The provisions of the automatic stay of Section 362 of the Bankruptcy Code are hereby modified as to DIP Factor to the extent necessary to implement the terms of this Order.

28.     This Order constitutes findings of fact and conclusions of law and takes effect and becomes enforceable immediately upon entry hereof and execution of the Financing Documents by the Debtor and the Debtor's representatives.  To the extent that a provision of the Financing Documents is inconsistent with a provision of this Order, the provision of this Order will control. Further, once the final form of the Financing Documents have been executed, the Debtor shall file

a copy of same on the Court's docket, which document will be available for review by creditors and parties in interest.

29.     Nothing in this Order will preclude the Court from entering a Final Order containing provisions inconsistent with or contrary to the terms of this Order, provided that the DIP Factor will have no obligation under the Financing Documents if the Final Order is not in form and substance acceptable to the DIP Factor; and provided further that the DIP Factor will be afforded all the benefits and protections of this Order, including without limitation, all protection afforded under § 364(e) of the Bankruptcy Code.

30.     This matter is set for a Final Hearing **at 10:30 a.m. (Eastern Time) on October 17, 2023**, before United States Bankruptcy Judge Guy R. Humphrey in the West Courtroom of the United States Bankruptcy Court.  As soon as practicable after entry of this Interim Order, the Debtor shall mail, first class postage prepaid, copies of this Order and a notice of hearing (the "Final Hearing Notice") to all creditors and parties in interest in this case.

31.     Objections, if any, shall be in writing, shall specify the ground(s) for and facts on which each such objection is based and shall be filed with the Clerk of the Bankruptcy Court with a copy served by hand-delivery, telecopy or overnight delivery service upon and received by counsel for the Debtor and the parties identified in (i) through (vi) above, so that such objections are received on or before **4:00 p.m. (Eastern Time) on October 13, 2023**; any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and received in accordance with the notice on or before the close of business on such date.

32.     If no written objections are filed by a party in interest, the Interim Order shall be deemed a final order for all purposes, and the Debtor and DIP Factor may submit an agreed Final Order to the Court with terms consistent with this Order and the DIP Financing.

33.     The provisions of this Interim Order shall remain in full force and effect pending conclusion of a Final Hearing and final determination by the Court on the Motion as contemplated in Bankruptcy Rule 4001(c)(2).

**IT IS SO ORDERED.**

Copies to:  Default List